v. Mr. Donohue, MP, Willisford. Internet Patents Corp. v. Active Network, Inc. Joseph Greco, MP, Internet Patents Corporation, Inc. Joseph Greco, MP, Internet Patents Corporation, Inc. Joseph Greco, MP, Internet Patents Corporation, Inc. Joseph Greco, MP, Internet Patents Corporation, Inc. Joseph Greco, MP, Internet Patents Corporation, Inc. Joseph Greco, MP, Internet Patents Corporation, Inc. Joseph Greco, MP, Internet Patents Corporation, Inc. Joseph Greco, MP, Internet Patents Corporation, Inc. I believe that, first of all, claim one, when it says maintaining state, the way that that should be interpreted is based on what specifically is defined in the specification. And may I read from the specification? This is at A79, which is column 9. And, first of all, let me start at line 45 because I think that's the best place to start. The most important aspect of the user interface of the present invention is not that it has tabs or that it enables a certain amount of non-sequential access to the various form sets, or those are the web pages, within a virtual application, but that it maintains data state across all panes. But the district court seemed concerned at the absence of detail as to how that's implemented. Yes, I think there was something to that effect, Your Honour, but if I can go on, I can show you in the spec where that is explained in more detail. And that's down at line, starting at line 60. It says, in contrast to the prior art, the present system, in all its embodiments, maintains virtual application information, relative dependencies, that means relative data dependencies, as stated above, and information context obtained and or derived from each pane accessed by the user applicant. This state maintenance, so that's the definition, this state maintenance enables use of standard browser back and forward button functions without loss of data and without losing the user's place in the application process. A user can therefore back up one or more sub-panes or panes, that is, switch to a logically earlier tab and correct or change a data entry without having to re-enter any data from the earlier point forward to the point at which the user jumps back. So there you restated aspects of the prior art and you restated a result. But you haven't said how. Well, the how is maintaining virtual application information, relative data dependencies, and information context obtained and or derived. Because the patent says that that's in contrast to the prior art. But that too is a result. Maintaining a state is a result. How does the invention get to maintain the state? When you use the forward and the back button, what is it about the invention that preserves the information on the different panes? It maintains the virtual application information, which it says the prior art didn't do. Yeah, I know what it does, counsel. I want you to tell me how. Well, that functional description is the description of the software. And that is directed to somebody skilled in the art to actually write the code. Now, this is not a case where enablement was raised as a defense. This is a case that. So somebody skilled in the art would look at this and say, wow, this appears to be a good result. Let me go write a code for it. Shouldn't we be evaluating whether somebody skilled in the art would look at the patent and see the code and be able to repeat exactly what. Well, first of all, your honor, I understand the question. I think it's certainly a good question. But under the current state of the law, that's you don't have to put the code in to a patent to enable it. It's it can be a functional description. There's no requirement that that source code and source code is really a functional description, too, even though it's a lower level. So under, for example, the Northern Telecom case, which I cited in the brief back from 1992, the Federal Circuit, this court, said that when you have computer implemented inventions, they're directed to those skilled in the art to be able to write the code. And if somebody skilled in the art can look at the functional spec, which this is, and write the code, then it's enabling. But again, that was not raised here. This is a section 101 case. And there's no way that this, on this record, that we can evaluate whether this is an enabling patent. Because there's absolutely no testimony in the record, obviously, because this is a 12B6 motion. But don't you think the Supreme Court, where they're having a look at Bilski and at Alice, would look at this and say the concept of not losing your entries on the forms when you go back and forth is abstract? I don't think so, Your Honor. It's a generalization. But I don't think it's abstract. It's not an algorithm. It's not a basic tool of research. It's not a fundamental economic principle or any of the examples that the Supreme Court gave. Now, I understand that in Alice the court said we're not establishing an absolute definition. But this is just not like any of those things. The big difference between this case and Bilski and Alice and the recent Digitech case that the court decided is that we're improving the functioning of the computer system with this software. We're improving the functioning of the computer system. Those other cases No, you're not improving the functioning of the computer system. You're improving the data retention. That's not improving the computer system. Improving the functioning of the computer system is effectuating a faster processor or maintaining larger cache of memory. Those are aspects of improving the computer system. You are simply improving users' use of particular applications by retaining data for them. Well, the computer system is the software and the hardware together. And we're improving the system's ability, its efficiency in not losing data when the user uses it. I think that that is an improvement to the system. That may be true. And that may be a valuable result to achieve. And certainly I think most people that filled out forms have noted the problem. They choose side and claim one and claim two. But you still haven't shown how you're going to do this, how the problem is solved. Let me give you an example. I can fill out a form, open a drawer, put the form in, close the drawer, and walk out of the room, come back the next day, open the drawer, pull out the form, and there's all the information. Now, I've not only explained the prior art, I've not only explained what the intended result is, but I've also explained how it's done. I fill out the form and I open the drawer, put it in, close the drawer. You don't have that in your – I'm asking you to show me that. Well, what I've showed you is what I believe answers the question. And all software in patents is described in functional terms. At least the way software patents are currently written. The code is not required. I mean, if someone had actually written the code for those various things that I described and put it in here, then yes, it would be a much more detailed specification and perhaps it would have less of a problem on enablement. But I do think something else is required other than just claiming a function. You have to establish either steps, you have to have an algorithm or a code or something. I mean, there's got to be something there other than just claiming a function or claiming a result. But algorithms, even if – I don't want to get off track, but even in means plus function claims, algorithms can be described in a few words. I mean, you don't have to have the code. They can be described in a few words and there have been recent cases where the court has upheld – Let me ask you a question before your time runs out. Is it required under our law that the district court have construed claims prior to making a section 101 determination? No, it's not required. In fact, I think your honors can look at these claims and say even if they're broad as the defendants, the appellees say, that they still don't have an abstract idea. But it's not required, but when there's a situation in all respects, but when there's a situation where we say we have an inventive concept, even if there is an abstract idea there, we say we have an inventive concept. That's what the patent says. But your inventive concept is that you don't lose the entries. And it seems to me that following Judge Rainer's inquiry, there are lots of ways by which the entries on the forms are not lost. So there needs to be something, does there not, which takes it beyond whether you call it abstraction or anticipation or obviousness or any of the other parts of the patent system. You're telling us that any system whereby you don't lose the entries is ours. But there you, I think, come against what the Supreme Court has been telling us in terms of general concepts being viewed as abstract concepts. Your Honor, that's not what I'm saying. I'm saying that only if the information is not lost and virtual application status is maintained, relative data dependencies are maintained, and information context is maintained. I mean, there may be numerous other ways to get to the same result and not doing it this way. There's nothing in the record that says that. You say there may be numerous ways to get to that result. There may be, but your claims don't even have a single way to get to that result. I would be repeating myself. Let me ask you a question. Is a court required to, let's say it doesn't construe the claims and it makes a Section 101 determination, is it required to tie its determination back to the claims or can it tie it solely to the remainder of the written description?  I mean, we're talking about a claimed invention. So the court should… What is the authority for that? The authority is that under Section 101, the claimed invention is what is or is not patentable subject matter. If you just look at a specification and you don't say, well, at least with respect to these claims, this is what they cover, then I think that that's definitely a problem. I mean, here the court cited the abstract. The court's definition… I say I'm running out of time, but the court's definition was so overbroad of what this patent covered. It said, the 505 patent claims the exclusive right to allow the use of conventional web browser back and forward navigational functionalities without data loss in an online application consisting of dynamically generated web pages. I mean, just looking at the clear language of the claims without even interpreting it in light of the spec, that's just wrong. That's way too broad. It's just a very overbroad description. I believe I'm out of time. Okay, let's hear from the other side a little. I think we need some rebuttal time. Mr. Greco? Mr. Triggs? Yes, Your Honor. Just give me a moment, please. May it please the court, my name is John Triggs, along with Ryan Levy. I represent the Permanent General on this matter, but I speak on behalf, in this portion of my argument, for all of the defendants at police. Alice, Mayo, Myriad, Bilski, the test is clear by now. It is a two-part test. You look for whether or not there is an abstract idea, and then secondly, you look to see, having found that there's that abstract idea, or any of the other exceptions, you look to see if there's something more. But the Supreme Court has acknowledged that every invention starts with an abstract idea, or what you can call an abstract idea, and it proceeds through levels of elaboration and precision until we get to a specificity which is not abstract anymore. Where would you place such a line in this case? I think the easiest way to answer that question is simply to look at Claim 1, which is really all we need to discuss in this case. And if you look at Claim 1, you will see, I think, if you look at that last step, and if you simply look at wherein said maintaining allows use of said back-and-forward navigation functionalities without loss of said state. Well, from what we're told, that's the difference. That's how it works. That's right. And that's the result it would produce. That's what they intended to do. That's the desired result. I understand. That's how it works. Not the result. You use the back-and-forward piece, and you achieve disadvantage. Yes, that's what they say will happen. That's what they want to happen. That's what they say will happen. The rest of the claims, however, the rest of the claim language, if we go to Step 2, is disembodied from that. You look at it, and they're out there, and there are these two claims or limitations, rather, in the claim. And then all of a sudden, there's this result where we maintain data if you use the back-and-forth buttons. And that's – you go back to Leroy. You go back to Morse. They talk about cause, motive, desired result, intended result. The Supreme Court for 175 years has recognized things like that can be an abstract idea. I think that you're talking yourself into direct conflict with the most recent statement of the Supreme Court that you don't take a claim clause by clause and say this clause, this step is old. Therefore, you lose. No. But what I'm looking for is, at its core, is there an abstract idea here? And what that abstract idea comes in the penultimate clause here where they say, based on Step 1, Step 2, we maintain data. And that's the abstract idea. I'm not separating it out. I'm just saying if you focus on that, that's the abstract. That's the desired result. That requires us, of course, to look at the claim in its entirety and step by step. And if you look at the next two steps, you've got what we – I just – I still – I'm sorry. I've been waiting very patiently for an answer to Judge Newman's first question from you, and I don't really understand where you're going with most of what you're saying because the question was a very simple one. It was on the spectrum of cases, if everything is at its kernel, an abstract idea, and then patent-eligible claims have a degree of specificity and implementation of that abstract idea, where on that spectrum does this case fall? And that felt like a softball to you, and you just didn't even swing at it. And so I'd like you to go back to her initial question rather than arguing with the court, which is what you seem to be doing, and I don't think you need to or want to. No, I don't. And focus on her question and really get to the heart of what it feels to me ought to be a response to that question. One, mea culpa. Two, on a scale of one to ten, this being abstract, I'd say it's over on the ten side of abstract as opposed to the one dead-on patent-eligible. So if I did a one of ten scale, I would say this is about eight for abstractness. That would be my answer to that question, Your Honor. And it's because it's so apparent, as I've said before, and you look at the other two steps, and all they are in that column one, that's the prior art. So what is the abstract idea? Why don't you define it for us? That you can obtain a result that permits you to use the back and forward buttons in a browser, be it Microsoft, whatever. And does this claim articulate how you would achieve that? No, it doesn't. It's disinvited. So your argument, as I understand it, is that the claim itself is simply to the abstract idea and doesn't contain any of the indicia the Supreme Court would otherwise like to see in order to render it patent-eligible. No, it has nothing else there. It is, as I think Judge Thomas reiterated, you look and see is there anything more. You go back to these other two. But the enablement is in the specification, as your opponent, as your friend has been trying to persuade us. And it's known that the claim is supposed to be a tight terse pointing the reader to this is my monopoly. This is what I've invented. Keep out. And if you need to provide written description, enablement, and everything else in this statute, then you read the claims we know in light of the entirety of the specification. However, the other side of that is you need enough in the claim to distinguish the prior art. And this is where the abstraction comes in. Most abstractions, I've got a cure for cancer. That's an abstraction until you get to how you do it. Where in these claims, or any of them, perhaps some not in suit, does one find the distinction between the concept, which you can find in the prior art, or which is undeveloped, and what a patentee is entitled to. Well, you don't find them in the first two elements of the claim because they're just prior art. But the Supreme Court has told us you don't do it element by element. You look at the claim as a whole. You look for the inventive concept and whether it's claimed. And then we look again, and we look at the cited provision from the specification. I believe that was column 9, line 60. That's what they've been talking about. What you have in all of these steps, and including that step, is something else I haven't touched upon. And that is, it's just data manipulation. This is just a form. It's a website on a page. Dynamic simply means you can put information in it as opposed to a static page. And save the data simply means if I say I have a 58 Chevy that's got so many miles and this is my driving record, I'll get a quote for certain kinds of insurance policies. That's what the prior art was doing. And prior art saves some, but not all, of data as you move back and forth. And what they've claimed at the end of the day is this result. And again, they're still just manipulating data. Each of these other elements and the one they've talked about in the specification is just saving data. That's all they're doing. Manipulating and saving data, excuse me. What's your answer to your opponent's point that the next step is the programming details, a five-foot shelf of zeros and ones to explain how the forward and back buttons move in this context? Interestingly, because in their reply brief, one of the things they point out at page 14 and page 23 and 24 is that there are no algorithms, no mathematical formulas, and very little structure. They haven't provided you with a system, a device, or some sort of algorithm. They haven't provided us with anything in this specification or these claims that talks to that. In fact, in their reply brief, they took pains to point out about what they also didn't have, which just underscores the fact that in that claim and in that specification, there's nothing other than an expression of a wish for this result. And there's no implementation of it. It would be necessary to be included in an application. In any application. I hesitate to say any, but yes, certainly not in this application, Your Honor. I'm always afraid of the never word. I'm looking at the patent sheet six. It is the flowchart. For example, in the first group of drawings, we have a whole bunch of cases, right or wrong, which say these are algorithms. Well, they've taken pains to point out that there is no algorithm in this case for this path. That they have said specifically, I believe, at page 23 and 24 of the great brief. They have pointed that out. I'll just double check that, Your Honor. They were centered on algorithms or mathematical formula. The 505 contained nothing of the sort. Page 24. They achieved their result. But it has nothing to do with implementing mathematical principles on a computer. We have said, I always thought an algorithm was a mathematical formula. But a whole bunch of cases of this court and others say, no, it's not. And point to drawings just like the one I mentioned. This is an algorithm, a logical process of reasoning. But if you look at the forms, from starting with form one, which is actually just a description of the prior art, you work through all of the diagrams, if you will, none of them do anything other than tell you the same things the claims do, which is here's what we're doing, here's what we're doing, all of that's in the prior art, and then voila, we maintain this back and forward functionality. But there's no indication, and they're not integrated. You've got these first two elements and then you've got the result, but there's no integration about how we do it. And a computer just isn't enough. I think the cases are clear on that. Earlier in your argument, you mentioned the limitations in the claims. So let me ask you, shouldn't the district court have first construed the claims before undertaking the Section 101 analysis? That's one question. Then the follow-up question is that, is a district court required to tie a Section 101 determination to the claims? Is that enough to tie it to the specification? Well, first answer, no, there was no construction needed. We never proposed a construction. We took the position it was clear on its face and the district court said so, and I think that is the correct decision. These claims are very simple and very clear. And to answer your second question, I don't think the court necessarily has to go into the detail that you might prefer from an appellate court, but he has taken the time to work his way through mostly Mayo. He obviously didn't have the benefit of Alice, but he's walked him through the Mayo test. And ironically, he quoted in his opinion, if you look at A5, he quotes the limitation from Column 9, Line 60 that we've been talking about as describing and reiterating what this desired result is. Wouldn't you say that we need to at least construe what maintaining a state means in order to determine whether the patent is ineligible? No, Your Honor. Maintaining a state just means if I put in my age and I go to another page, it saves my age. That's just maintaining the state. That's just saving data. And that's just data manipulation. That is not, and even they can see. You mentioned manipulation, saving, having it before you. Those are three different things. What does maintaining a state mean? Preserving data. Preserving data. You've generated data or you've input data, and it's preserved. Judge Reina is making a really good point, and there might be cases in which it is a determinative factor, but remind me, if you would, did they make any argument that would suggest that there was a dispute over particular words in a claim, in this case, such that 101 should not proceed? Not at the trial court level. Only in the reply brief talk. That's right. They, I think, concede, and that's what's, let me just finish with that because I think that's important, and it goes to a little bit of what I've been saying. The trial judge at A5 talks about this precise provision, uses it to describe what the patent says. It helps him as a specification. It should tell him what the patent is teaching him or not teaching him. When they have the motion on the other three cases, which they style as a motion for rehearing, they criticize the judge, if you look at their brief, for, number one, spending too much time on the abstract, which is actually column 10, and column 9, line 60, the specification. He shouldn't have looked at that, according to them, at that level. He should have just focused on the language of the claims. But just as an appellate court, looking at our position in the bank court, for example, what do you say? Should we require that a district court first construe? I mean, you construed the claims standing there before us. I haven't done anything. I've told you anything that's not in the claims or not in the specifications. No, but you construed maintaining the state. That web set is a form set. They've defined everything in this, mostly because it's so much prior art. So the answer to your question is no, Your Honor. I think that case by case. How can a court determine, make a section 101 determination, if it doesn't reference to the claims? Isn't the name of the game the claim? He did. And he's referenced the claims. And he said that they're clear on their face. And they don't teach me anything other than a desired result. And that doesn't suffice under, at that stage, Mayo, now under Mayo and Alice. And that should be enough, Your Honor. Thank you. I've used up all my time. If there are no other questions. You have. And let's see. I think Mr. Are you Mr. Murphy? You have one minute. You have to talk first. Good morning to the panel. My name is Matt Murphy. I'm here on behalf of Active Network. I have only one point that's peculiar to my client, is that there has been no record developed before this court or the district court on the impropriety of the order to show cause as a procedural mechanism for dismissing the plaintiff's case against my client. There is no argument or authority in any of the briefs. There was no request for stay at the district court while the general's case was appealed. Any arguments in that regard would be waived at this point. And therefore, the dismissal with prejudice should be affirmed. That is my sole point. Unless the court has questions of me, I will sit down. I think we're all right. Thank you, Mr. Murphy. Mr. Korniski. We have two more minutes, but we'll enlarge your time accordingly. Yes, Your Honor. Thank you. I actually think the court hit on the points I wanted to make. Number one, Judge Selna, your point that it's not there. It's Judge Reyna. I'm sorry. Judge Selna's a district court case. It's all right. Judge Reyna, I'm so sorry. The point here is it doesn't show how to maintain the state. The abstract idea is maintain the state of this data. It's sort of like preserve food. And there's no explanation of how you do it. Then, Your Honor, Judge Newman and Judge Moore asked, well, where does it fall on the spectrum? What's the difference? If you look at Alice and Mayo and a number of cases, they say there's a two-step process to look at. First, you determine from the claim, is there an abstract idea? Is it an abstract idea? The district court said yes. The next step is, is there a specific application of that abstract idea to achieve the result? There is not. And so the point is, where does it fall on? But I do think that the Supreme Court was looking at a succession of an increasing number of limitations and recognized that there is a point, perhaps, at which the abstraction is overcome by the amount of detail. That is correct, Your Honor. Where would you put such a line in this case? In this case, I would still look at the claim as a whole. You look at all of the elements here. That's what you do. Where would you put the line? And I would still put the line at that claim is still only at that first stage of describing an abstract idea. There's no specificity like you might have found in Deere or the Microsoft case where it applies that abstract idea of maintaining state. What about the forward and back buttons? I'm sorry? What about the use of the forward and back buttons? That's something that doesn't seem to be explicitly... I know that the prior art wasn't explored in detail, but why doesn't that cross the line? Because, once again, if you're just naming it, it's sort of like the deeds in contract case. Just because you name some element that might have a physical being doesn't mean you're applying that abstract idea. It doesn't say might have. No one's disputed how it works. I'm sorry, Your Honor, I don't understand. You said that it might have some physical being. They got it in the claim. They describe that this is how it's done. They don't describe how it's done. They just describe a result. They say there are buttons. Well, that doesn't change the claim from being an abstract idea of maintaining the state. Well, then you come to the software, and this is how it works. Is there anything in between? There isn't, Your Honor. But our cases over and over say, no, you don't put the programming details in a patent. That is correct. Maybe you put it in copyright, but you don't put it in a patent. That's correct. But what you have here is, if you look at the spec, it says you establish that the invention is not limited to a specific type of machine. It says, quote, column 15, lines 27 to 43. The method may be performed in hardware, software, or any combination. It can be carried out by operating on a computer of any type. Can I ask you a question about these backwards and forwards buttons to make sure I understand it right? I don't understand the claim as saying, utilize the backwards and forwards buttons. I understand the claim as saying, when you do other things, i.e., the things you would need to do to maintain the state, whatever they are not covered in the claim, that it would maintain data even when you move backwards and forwards. Not you're using backwards and forwards to effectuate the result, but rather it's part of the result. Even if you go back and forward, this data is going to be maintained. I just want to make sure I understand the technology. That's my understanding, and it doesn't tell you anything else. It doesn't tell you the how, which is what Judge Raynaud was mentioning earlier in the questions, but that's all I have for now. Okay, good. Thank you, Mr. Kudliski. Okay. I'll proceed, Mr. Greco. Thank you, Your Honor. I'd like to address one of the last points first, which was counsel's reference to column 15 and saying that this simply is implemented on any computer system, and it doesn't then effectively improve the machine. But where he read from, starting at line 27 or so, it says the method of the present invention may be performed in hardware, software, or any combination thereof, as those terms are currently known in the art. In particular, the present method may be carried out by software, firmware, or microcode operating on a computer or computers of any type. Additionally, software embodying the present invention may comprise its center. So in other words, this clearly is a software patent. The invention resides in the software. Firmware and microcode are instructions like software. So I mean, to say that that therefore shows that this is just a compilation of information to be run on any standard computer is simply wrong. That's not what this patent says. This patent clearly says it's improving the performance of a computer system. Now, that makes it different from these other cases, such as Alice or Bilski. We're not just running algorithms on a standard computer system. We're improving the interface of the user in filling out the forms by giving the computer more capability so that it's more efficient. If I could just use an analogy, the idea of having different windows on a computer screen so that someone can work and multitask on one screen with inputting in different windows. I don't know who exactly invented that. Obviously, there's a Microsoft product called Windows. But that's the same basic concept. You're improving that computer system by making it more efficient for a user to be able to do something using that computer system. And that is what we're talking about here with this patent. That's what it says it does. And for purposes of this appeal, the court has to believe that. Because it's a Rule 12b6 motion. And the benefit of the doubt has to be given to the non-moving party, to the patent. But you're really reinforcing what the district court said. You say that we're improving the computer system so that the entries on the form are not lost while you're working on it. Isn't that an abstract idea in the context? If you look at the ideas of Alice or Bilski, are no more detailed than that? Well, I don't think it's a matter of detail, Your Honor. I think it's a matter of improving the function of the computer system, which Alice said was something that would be patentable subject matter. And simply using a standard computer system to do something like, in Alice, it was, I think of it as Espero. They called it Clearinghouse, where you had shadow accounts. And so you made sure that there was enough money in each account before the transaction closed. Well, that doesn't make the computer more efficient. That doesn't make the interface more efficient. That simply allows you to do something on a computer that it would take longer to do by hand or to have an Espero agent. The same with Bilski. Bilski was a hedging algorithm. It was figuring out a way to better avoid risk. And it wasn't making the computer more efficient. It was just a way to figure out how to better avoid risk. Now here, if we had had a patent that said, we've got this great new way to compare insurance policies. In other words, you can compare the price. But if you've got two different prices, how do you really compare those? And there was some algorithm to grade them or whatever, then that would be in the Bilski range. But that's not what we're doing. This is allowing you to be more efficient in the use of the computer system by not using data. And we did raise, at the district court level, we did raise claim construction. We said that the claim should be construed. And we also objected, because it was the burden of the moving party, to show that there was no plausible claim construction that would yield a patent-eligible subject matter. And in our brief, this is A1092 at lines 17 through 25, we argued that the general of the moving party had effectively used an overbroad claim construction that was improper because they had argued, and this is a quote from the general's brief, the title and bulk of the detailed description are substantively unrelated to the claim dimension itself. And we said that's wrong. And we cited Phillips. So we raised claim construction on various terms, one of which was maintaining state. You argued below that they were arguing or that there had to be construction of the words maintaining state? Yes. Where did you make that argument, as opposed to just a general statement that you ought to do claim construction because they're being overbroad? That was one of the elements we mentioned that needed to be construed. More than just mentioning construction, I mean, did you initiate or was there an actual dispute over claim construction? Well, yes, in the sense that we said they're coming in and saying that this is this overly broad general patent and ignoring the specification. In fact, they even used the term that- But that's not claim construction. Going back to what Judge Moore was saying, what term of the claim did you put into dispute? We said, OK, so I answered the question correctly. We didn't say, here's a term and this is how it should be construed. We said there are various terms, including maintaining state, that should be construed, that need to be construed before this motion is decided. And we said that it was their burden to show that this patent could only be construed such that it's invalid. And we said they're being too broad. Now, did we offer a precise claim construction? No, we did not. But we said that they were wrong. And the court accepted their argument. Again, I don't want to reread the same thing, but the court basically said this covers anything. This covers any situation where the court said, and this is at A5 lines 4 through 6, the 505 patent claims the exclusive right to allow the use of conventional web browser back and forward navigational functionalities without data loss in an online application consisting of dynamically generated web pages. That's just wrong. I mean, even if you just read the claims without the additional construction that we're offering, that's just wrong. It's just not that broad. If the claims were to be construed, are there any factual elements involved in claim construction? Well, claim construction is a matter of law. But evidence can be offered. Extrinsic evidence can be offered. The file history can be offered. The file history is not in evidence. I'm asking you, would the construction of any of the terms in these claims require the introduction of factual evidence or expert testimony or things of that nature? I don't think they would. A factual finding. I don't think they would require it, Your Honor. So it's OK. OK. Well, thank you. OK. Thank you. Thank you, Mr. Greco. We thank all of you. The case is taken under submission. Thank you very much.